ICSC PARTNERS, L.P., Appellee;  The A. J. 1989 Trust, Appellant,

v.

KENWOOD PLAZA L.P. et al., Appellees.

[Cite as *ICSC Partners, L.P. v. Kenwood Plaza L.P.* (1996), 116 Ohio App.3d 278.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950780.

Decided Dec. 4, 1996.

*Chernesky, Heyman & Kress, Thomas P. Whelley* and *Frederick J. Caspar,* for appellee ICSC Partners, L.P.

*Lindhorst & Driedame, James L. O'Connell* and *Harold L. Anness; Holland & Knight, S. Scott Morrison* and *Leslie A. Shanklin,* for appellees.

*Kelley, McCann & Livingstone, Mark J. Valponi* and *Halle Fine Terrion; Tucker, Flyer & Lewis, Gary R. Siegel* and *Anne–Marie Grande,* for appellant, The A.J. 1989 Trust.

---

MARIANNA BROWN BETTMAN, Presiding Judge.

On June 15, 1994, ICSC Partners, a Limited Partnership ("ICSC"), filed a derivative limited-partnership action on behalf of the Kenwood Plaza Limited Partnership ("Kenwood") in the court of common pleas.[1] The complaint named as defendants Herbert S. Miller ("Miller"), the sole remaining general partner of Kenwood, and two companies in which Miller is a stockholder, the Western Development Corporation ("Western")[2] and The Mills Corporation ("Mills"). Kenwood was named as a nominal defendant.

ICSC's complaint alleged that Miller, as a general partner of Kenwood,[3] breached his fiduciary duty to the partnership through his acts of fraud and self-dealing. ICSC asserted other assorted claims against Miller, Western, and Mills, including a conversion claim, a conspiracy claim, a breach-of-contract claim, and a claim under the Ohio Corrupt Activity Act. ICSC sought indemnification to the partnership by Miller for his unauthorized acts and restitution to the partnership by Western and Mills in the amount of $6,341,422 plus interest. ICSC also sought to enjoin Miller and Western from transferring partnership assets except as expressly authorized in the partnership agreement or by the court and to require Mills and Western to pay for an accounting of partnership assets and operations under their control and to return to the partnership funds from any other wrongful transactions revealed by the audit. Finally, ICSC sought $5 million in punitive damages from Miller and Western.

The defendants filed a counterclaim on behalf of Kenwood against ICSC, Towne Properties, and their partners, Marvin Rosenberg and Neil Bortz, alleging

---

1. R.C. 1782.56 authorizes limited-partnership derivative lawsuits. ICSC is the largest limited partner of Kenwood.

2. This entity manages the Kenwood Towne Centre, an upscale mall owned by Kenwood in suburban Cincinnati, Ohio.

3. Miller is currently the only general partner. Richard L. Kramer ("Kramer") resigned from his position as co-managing general partner in April 1994.

that Rosenberg and Bortz are de facto general partners of Kenwood and as such breached their fiduciary duty to the partnership by tortiously interfering with contracts of the partnership, misappropriating trade secrets, and conspiring to oust Miller as managing general partner. The counterclaim also included allegations against Rosenberg's son, Barry Rosenberg, a former employee of Western. Kenwood sought from ICSC, Towne Properties, Bortz and both Rosenbergs $5 million in compensatory damages and $10 million in punitive damages.

In July 1995, the parties entered into a settlement agreement and submitted the agreement to the trial court for approval pursuant to Civ.R. 23.1. On July 17, 1995, the trial court entered an order directing that all limited partners who were not parties to the action be given notice of the proposed settlement and the opportunity to file objections to it. The A.J. Trust ("the Trust") filed objections to the proposed settlement on August 14, 1995, the last day to file objections. On August 16, 1995, the Trust filed a motion to intervene and a verified complaint in intervention.

On September 27, 1995, a hearing was held before the trial court regarding the merits of the Trust's objections and the Trust's motion to intervene.[4] On October 13, 1995, the trial court entered an order approving the settlement agreement with modifications and overruling the Trust's motion to intervene.

The Trust filed an appeal from this order setting forth three assignments of error. The first two assignments of error are directed to the trial court's approval of the settlement agreement. In its third assignment of error, the Trust argues that the trial court erred in denying its motion to intervene of right pursuant to Civ.R. 24(A)(2).[5] We will address the third assignment of error first.

In order to intervene of right under Civ.R. 24(A)(2), the Trust must file a timely complaint in intervention and show (1) that it claims an interest relating to the property or transaction which is the subject of the action, (2) that it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest, and (3) that the existing parties do not adequately represent its interest. *Blackburn v. Hamoudi* (1986), 29 Ohio App.3d

---

4. Apparently this hearing was not transcribed.

5. This rule provides:
    "(A) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action:
    "* * *
    "(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

350, 29 OBR 479, 505 N.E.2d 1010; Civ.R. 24(A)(2). The Trust has the burden of establishing this.

The Trust claims that the settlement agreement entered into by ICSC on behalf of Kenwood will adversely affect its pending litigation instituted in the Southern District of New York on behalf of itself and Kenwood and that, therefore, ICSC has not fairly and adequately represented the Trust's interest.[6] ICSC argues that the Trust's complaint in intervention is untimely, that ICSC fairly and adequately represents all the limited partners' interests as well as the interests of the limited partnership, and that the Trust desires to intervene for the sole reason of promoting the interest of the former co-managing general partner of Kenwood, Richard L. Kramer, the settlor of the Trust and apparent rival of Miller.

A prerequisite to intervention of right is that the application be timely in the context of trial proceedings. The sound discretion of the trial court is involved in making this determination. In exercising that discretion, the court should consider the effect that the existing action will have on the person seeking intervention as well as any unfair prejudice and delay that intervention will have on the disposition of the matter before the court.

A motion to intervene as of right, even when filed shortly before trial due to a settlement agreement, should be given consideration consistent with the liberal construction given the rule governing intervention as of right. *Blackburn, supra.* Although the Trust's motion to intervene was filed after the scheduled trial date and after difficult negotiations between the parties, we hold that the motion to intervene based upon the settlement of the claims was timely.[7]

The Trust has satisfied the next two requirements for intervention as of right. However, the Trust has failed to produce sufficient evidence indicating that ICSC has not fairly and adequately represented its interest.

---

6. On April 27, 1994, the Trust and Richard Kramer, individually and derivatively on behalf of Kenwood and Portals Development Associates Limited Partnership, filed a complaint in New York state court against Miller, The Mills Limited Partnership and Ernst & Young. Kenwood was named as a nominal defendant. The lawsuit was eventually removed to the United States District Court for the Southern District of New York.

7. The Trust argues also that the fact that the defendants filed a counterclaim against ICSC indicates that ICSC cannot fairly and adequately represent the Trust's interest in this derivative action. However, the counterclaim is unrelated to the derivative claims and does not alone demonstrate inadequate or unfair representation. See, generally, *Shaver v. Std. Oil Co.* (1993), 89 Ohio App.3d 52, 57–58, 623 N.E.2d 602, 605–606. In any event, this was not raised below, and if the Trust's motion to intervene was based solely upon this counterclaim filed on February 6, 1995, the motion would not be timely because of the Trust's constructive knowledge of the litigation from its inception.

First, the Trust, as a limited partner in Kenwood, has an interest in the property and transactions at issue much the same as a shareholder of a corporation has an interest in the subject of a derivative action on behalf of the corporation.

Second, the New York litigation does include a derivative challenge of the propriety of some of the same transactions attacked in ICSC's derivative complaint. These include certain cash payments made by Kenwood to Miller and other entities owned or controlled by Miller, including Western and Mills. A court-adjudicated settlement disposing of those claims on behalf of the limited partnership would prevent further litigation of those claims on behalf of the limited partnership. Notably, the action brought is a derivative suit, and not a direct lawsuit based upon the rights of a limited partner.

Finally, "[w]hen the party seeking intervention has the same ultimate objective as a party in the suit, the presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Piedmont Paper Products, Inc. v. Am. Fin. Corp.* (S.D.Ohio 1980), 89 F.R.D. 41, 44. In a derivative case such as the one before us, the ultimate goal of the representative plaintiff is to undo wrongdoings to the limited partnership. The representative plaintiff represents the limited partnership, itself, and the entire group of limited partners.

The record before us, which does not include the settlement agreement [8] or a transcript of the hearing on the motion to intervene, fails to demonstrate adversity of interest, collusion, or nonfeasance. The record does show that the Trust was the sole objector to the settlement agreement.[9] In the absence of the settlement agreement in the record, this reviewing court has no choice but to presume the regularity of the proceedings below. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219–220, 400 N.E.2d 384, 385; *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506. We must presume that the settlement agreement demonstrates ICSC's fair and adequate representation of the Trust's interest.[10]

Therefore, the assignment of error is overruled.

---

8. The settlement agreement was never filed and docketed.

9. All thirteen of the nonparty limited partners in Kenwood were given notice of the proposed settlement agreement and the opportunity to file objections with the court.

10. The appellant has the duty to ensure that the record necessary to demonstrate the error complained of has been certified to the appellate court. App.R. 9(B).

The next two assignments of error address the merits of the trial court's decision to approve the settlement agreement and the process by which the trial court evaluated the fairness of the settlement agreement.

■■ Although this action involves derivative claims on behalf of a limited partnership, we find the law governing the settlement of derivative corporate claims applicable.[11] We review the approval of settlements in limited-partnership derivative actions for abuse of discretion. *Granada Investments, Inc. v. DWG Corp.* (C.A.6, 1992), 962 F.2d 1203; *In re Gen. Tire & Rubber Co. Sec. Litigation* (C.A.6, 1984), 726 F.2d 1075, certiorari denied (1984), 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120; *N. Coast Cable Co. v. Howley* (Mar. 10, 1994), Cuyahoga App. No. 64785, unreported, 1994 WL 78085.

First, the Trust argues that the trial court abused its discretion by approving the settlement agreement without evaluating the fairness of the settlement agreement. We find no merit to this argument. The court required the parties to notify all partners of the settlement agreement terms and the partners' ability to file objections with the court. After the Trust filed such objections, the court held a hearing to evaluate the merits of those objections. At this same hearing the parties apparently also addressed the adequacy of ICSC's representation of Kenwood and the other partners in response to the Trust's motion to intervene. In its decision, the trial court specifically stated that it reviewed the entire record in the case before determining that the settlement is fair, reasonable, and adequate to the partnership and each of its partners. We hold that the trial court did not abuse its discretion in not having yet another hearing to re-evaluate the merits of the settlement agreement. The first assignment of error is overruled.

■ In its second assignment of error, the Trust argues that the trial court abused its discretion by approving the settlement agreement, which on its face demonstrates collusion between the settling parties and unfairness to the limited partnership and its partners. In deciding whether a settlement is fair, reasonable, and adequate, a court should consider the following factors:

"(1) whether the proposed settlement was fairly and honestly negotiated;

"(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

---

11. Although a limited-partnership derivative lawsuit is statutorily prescribed by R.C. 1782.56, the statute is silent as to the procedural and substantive requirements to dismiss the claims pursuant to a settlement agreement. Because this is a derivative action and the parties do not dispute the trial court's authority to predicate dismissal of the claims on the trial court's approval of the settlement, we look to Civ.R. 23.1 and F.R.C.P 23.1, which govern corporate derivative actions, in evaluating the trial court's approval of the settlement.

"(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation;

"(4) the complexity, expense, and likely duration of the litigation;

"(5) when significant discovery has been completed, the court must consider and should defer to the judgment of experienced trial counsel who competently evaluated the strengths of his proofs;

"(6) the judgment of the parties that the settlement is fair and reasonable;

"(7) the objections raised by shareholders of the defendant corporation, but not to withhold approval merely because some shareholders objected to it; and

"(8) the number of objectors to the settlement." (Citations omitted.) *Granada Investments, Inc. v. DWG Corp.* (N.D.Ohio 1993), 823 F.Supp. 448, 453–454.

We overrule the assignment of error, as the record before us does not include the settlement agreement reviewed and approved by the trial court. In the absence of the settlement agreement in the record, this reviewing court has no choice but to presume the regularity of the proceedings below. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219–220, 400 N.E.2d 384, 385; *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 409, 629 N.E.2d 500, 506. We must presume that the settlement agreement is fair, reasonable, and adequate.[12]

We affirm the judgment of the trial court denying the Trust's motion to intervene and approving the settlement agreement.

*Judgment affirmed.*

DOAN and HILDEBRANDT, JJ., concur.

---

12. See fn. 10.