JOURNAL ENTRY AND OPINION
Appellant Great Midwest Insurance Company (hereafter "Great Midwest") appeals from an order that denied its motion seeking limited intervention in an action against its insured pending in the Cuyahoga County Common Pleas Court. The trial court ruled Great Midwest's application to intervene was untimely. Because granting such limited intervention represented the only efficient way to obtain a complete and consistent adjudication of the parties' various claims and there is no indication that any party would have been prejudiced by granting Great Midwest the limited intervention it sought, we reverse the trial court's judgment and remand the matter for further proceedings.
The record reflects that on April 8, 1998, Donna Schmidlin and Kelly D. Kirk filed a complaint naming as defendants D V Enterprises, Inc., Sportsman's Tavern, Richard Vambut, and Pauline Demonia (hereafter collectively referred to as "D V"), as well as several other named and unnamed individual defendants.[1] The gist of the complaint was that on October 6, 1995, D V employees served alcohol to obviously inebriated customers who then assaulted and battered Schmidlin and Kirk and proximately caused them to sustain personal injuries. Trial was scheduled for October 13, 1998, but that trial date was continued because Schmidlin and Kirk replaced their counsel. On October 14, 1998, the court rescheduled trial for April 14, 1999.
On October 21, 1998, Schmidlin and Kirk's new counsel filed a motion for leave to amend the complaint and prayer for relief. The proposed amended complaint, a copy of which was tendered with the motion for leave, explicitly sought recovery from D V under Ohio's dramshop act, R.C. 4399.18, and for negligence in failing to keep its premises reasonably safe. On November 17, 1998, the court granted Schmidlin and Kirk leave to amend their complaint, adding that trial remained set for April 14, 1999. Schmidlin and Kirk filed their amended complaint on December 1, 1998. On February 18, 1999, Kirk voluntarily dismissed his claims as to all defendants with prejudice, leaving Schmidlin as the sole plaintiff. By February 18, 1999, the only claims left for disposition were (1) Schmidlin's claim against the D V defendants which sought recovery under the dramshop act and for negligent security, and (2) Schmidlin's claim against another named defendant for battery.
On March 29, 1999, Great Midwest filed a motion seeking leave to intervene as a matter of right as a third-party defendant. Great Midwest identified itself as the liability insurer for D V Enterprises, Inc. on the date of the underlying incident. Great Midwest's filing alleged that the applicable insurance policy limit for liquor related liability was $25,000, whereas the applicable policy limit for certain other claims was $300,000. Because the basis for D V's liability would determine Great Midwest's obligation under its policy. Great Midwest sought intervention for the limited purpose of submitting appropriate jury interrogatories and/or jury instructions to ascertain the legal basis for any judgment against D V and thus to determine the applicable policy limit. Great Midwest contemporaneously tendered a proposed intervention complaint seeking such limited intervention and reserving its ability to seek a declaratory judgment "with respect to the applicable limit of liability."
Schmidlin opposed Great Midwest's application for intervention and, in the alternative, sought permission to address liability insurance issues at trial if the court granted Great Midwest leave to intervene. On April 7, 1999, within the filing deadline set under the court's October 14, 1998 revised scheduling order, Great Midwest filed proposed jury interrogatories addressing the basis for any liability against D V.
On April 7, 1999, however, concluding that Great Midwest's application was untimely, the trial court denied Great Midwest's motion to intervene. Great Midwest filed this appeal on April 13. 1999. The trial court removed the case from its active docket pending the outcome of Great Midwest's appeal.
Great Midwest's assignment of error asserts:
 THE TRIAL COURT ERRED IN DENYING GREAT MIDWEST INSURANCE COMPANY'S MOTION FOR LEAVE TO INTERVENE.
The assignment of error is well taken.
Great Midwest sought intervention as of right pursuant to Ohio Civ.R. 24(A), which provides in relevant part:
 Upon timely application anyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
In deciding whether to grant intervention as a matter of right, this court said the following in Widder Widder v. Kutnick
(1996), 113 Ohio App.3d 616:
 In order for a person to be entitled to intervene as a matter of right, the application must be timely and the following must be demonstrated:
 1. That the intervenor claims an interest relating to the property or transaction which is the subject of the action;
 2. That the intervenor is so situated that the disposition of the action may as a practical matter impair or impede his or her ability to protect that interest; and
 3. That the existing parties do not adequately represent his or her interest.
Id. at 624. Ohio courts construe Civ.R. 24 liberally in favor of intervention. See, e.g., State ex rel. Strategic CapitalInvestors, Ltd. v. McCarthy (1998), 126 Ohio App.3d 237; Petermanv. Pataskala (1997), 122 Ohio App.3d 758; ICSC Partners, L.P. v.Kenwood Plaza L.P. (1996), 116 Ohio App.3d 278; Blackburn v.Hamoudi (1986), 29 Ohio App.3d 350.
In this case, neither the parties nor the trial court contest Great Midwest's assertion that it qualified to intervene as of right under Civ.R. 24(A) because (1) it has an interest relating to the subject of the action; (2) the disposition of the action in Great Midwest's absence could impair or impede its ability to protect that interest; and (3) Great Midwest's interest was not adequately represented by existing parties. Nor is there any contention that Great Midwest did not comply with the procedural requirements of Civ.R. 24(C).[2]
At issue, however, is whether Great Midwest's application was timely. "The concept of timeliness has two aspects: timeliness with regard to the statute of limitations and timeliness in the context of the trial proceedings." Widder Widder v. Kutnick,supra, 113 Ohio App.3d at 624. See, also, Likover v. Cleveland
(1978), 60 Ohio App.2d 154, 157. The case at bar does not present any question concerning the statute of limitations and involves only the question whether the timing of Great Midwest's application interfered with the trial proceedings.
The Supreme Court of Ohio specified the relevant factors for this second aspect of timeliness in State ex rel. First New ShilohBaptist Church v. Meagher (1998)., 82 Ohio St.3d 501. The court declared:
 Whether a Civ.R. 24 motion to intervene is timely depends on the facts and circumstances of the case. The following factors are considered in determining timeliness: (1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.
Id. at 503 (citations and punctuation omitted). The trial court has discretion in deciding whether the motion to intervene is timely and that decision will not be reversed unless the court acts unreasonably, arbitrarily, or unconscionably. Id.
As to the first factor, Great Midwest filed its motion to intervene just over two weeks before the case was scheduled to be tried. While this fact does not favor Great Midwest, it must also be noted that intervention as of right under Civ.R. 24(A) may be granted at a time in the proceedings when permissive intervention under Civ.R. 24(B) would not. As our court said in Likover v.Cleveland, supra:
 [I]n cases of permissive intervention, greater consideration may be given to undue delay or prejudice in adjudicating the rights of the original parties, whereas in cases of intervention of right, the court may give the greater consideration to possible prejudice to the intervenor in protecting his interest if intervention is not granted.
Likover v. Cleveland, 60 Ohio App.2d at 159. See, also, Fouche v.Denihan (1990), 66 Ohio App.3d 120.
Thus in Blackburn v. Hamoudi (1986), 29 Ohio App.3d 350, the court held that an insurer's application to intervene in a tort action filed three weeks before trial was not untimely, stating: "A motion to intervene as of right, even when arising shortly before trial due to a settlement agreement, should be given consideration consistent with a liberal construction of Civ.R. 24(A)." Id.,29 Ohio App.3d at 354. In that case, the insurer's particular need to intervene to protect its right of subrogation arose during the course of the pending litigation. Because the disposition of that litigation would impair or impede the insurer's ability to protect its interest and no other party could adequately represent the insurer's particular interest, the court held the insurer was entitled to intervene even though trial was scheduled to begin in three weeks. Similarly, Great Midwest's application to intervene as of right filed shortly before trial must still be fairly considered in light of the contentions that its need to intervene did not arise until after Schmidlin filed her amended complaint creating an issue over the applicable coverage limit, that the disposition of this action would effectively fix Great Midwest's duty to indemnify, and that no other party adequately represented Great Midwest's interest.
As to the second factor, Great Midwest indicated its reason for intervening was for the limited purpose of submitting jury interrogatories and/or jury instructions to ascertain the legal basis and coverage limit that would be applicable in the event of a verdict in favor of Schmidlin. Consistent with that stated purpose, Great Midwest filed its proposed jury interrogatories within the filing schedule established by the court.
Schmidlin and the trial court emphasize, however, that because Great Midwest's intervention complaint additionally reserved the right to seek a declaratory judgment with respect to the applicable limit of liability, Great Midwest's purpose was not in fact so limited. But Great Midwest did not seek any pre-trial declaration and thus did nothing that would adversely affect the parties' trial preparation.[3] Reserving the ability to request appropriate declaratory relief after the trial was over is not inconsistent with the limited scope of intervention sought by Great Midwest.
Concerning the third factor, Schmidlin contends Great Midwest knew or should have known of its interest as early as April 8, 1998 when the original complaint was filed. But that contention is untenable because there are no facts to indicate that Great Midwest knew or should have known that the basis for its insured's liability and the applicable policy limit were in question at that time. Indeed, even Schmidlin says that the April 8, 1998 complaint drafted by Schmidlin's former counsel was "sloppy" and "poorly drafted." In any event, nothing in that pleading would have put Great Midwest on notice that D V's liability was based upon anything other than a dramshop act claim.
Assuming that Great Midwest knew or should have known from Schmidlin's December 1, 1998 amended complaint that its indemnification coverage limit was in question, courts must give liberal consideration to requests to intervene as of right. See,e.g., Blackburn v. Hamoudi, supra. While Great Midwest probably could have sought intervention earlier than it did, intervention would presumably have been unnecessary if, for instance, a settlement with Schmidlin were reached. Nothing in the record clearly establishes when Great Midwest learned of Schmidlin's additional liability claim or that it should have intervened before it did.
With regard to any prejudice the parties would sustain if intervention were allowed, the trial court stated that "Great Midwest's motion is so untimely that trial of this matter would be delayed and the existing parties would be prejudiced by the granting of said motion." Yet neither the court nor Schmidlin identifies any reason why Great Midwest's motion would necessitate a delay in the trial or explains how the parties would be prejudiced by Great Midwest's limited intervention. To the extent the parties needed to respond to Great Midwest's intervention complaint, Great Midwest's allegations presumably could have been deemed denied by the parties. In any event, no one requested a delay in the trial. There is no reason to think this case could not have proceeded to trial as scheduled, with Great Midwest's participation limited to that which it requested. More importantly, however, there is no indication that Great Midwest's limited participation would have caused any substantive prejudice to the parties.
We do not doubt that Great Midwest's limited participation could affect the conduct of the trial. It would appear that both Schmidlin and the D V defendants could have a common interest in obtaining a general verdict untested by interrogatories, because that would presumably maximize the insurance coverage owed by Great Midwest and effectively foreclose Great Midwest from the ability to ascertain or later question which policy limit applied. Only Great Midwest has an interest in identifying the basis for a verdict in Schmidlin's favor, because that would determine the extent of Great Midwest's duty to indemnify.[4] So while Great Midwest's involvement might cause the parties to adjust their trial strategy, there is no reason to think that any continuance was necessary and there most assuredly is no reason to deny Great Midwest the right to have its interest fairly represented. Great Midwest's limited intervention may be inconvenient, but it would not be prejudicial.
Finally, the circumstances of this case militate in favor of Great Midwest's limited intervention. The extent of Great Midwest's financial exposure, if any, would depend on the legal basis upon which Schmidlin obtained a verdict against the D V defendants. That question could be answered only by this jury. Under analogous circumstances, the court in Peterman v. Pataskala
(1997), 122 Ohio App.3d 758, found intervention appropriate "due to the fact that appellants have no other method, available to them, to protect their interests. Such circumstances favor. intervention." Id. at 763.
For its part, the trial court refused, in its words, to "facilitate Great Midwest's untimely attempt to `back door' a declaratory judgment action under the guise of a motion to intervene." To be sure, Great Midwest could have filed a separate declaratory judgment action, but that action still would be dependent on the outcome of this case. More importantly, limiting Great Midwest to a separate declaratory judgment action would be ineffective because the legal basis for a verdict in favor of Schmidlin could be determined only by jury interrogatories submitted in this case, and only Great Midwest had the interest to obtain that determination. Indeed, issues determined in one proceeding at times may be given preclusive effect in a later proceeding. See Grange Mut. Cas. Co. v. Uhrin (1990), 49 Ohio St.3d 162;Howell v. Richardson (1989), 45 Ohio St.3d 365. Permitting narrow intervention in the instant case, by contrast, was the only practical means to allow all legal claims to be decided efficiently and consistently in one proceeding.
We hasten to add, however, that our decision should not be understood to require intervention on mere demand. The parties and the court have legitimate interests in the orderly disposition of litigation, and any party who seeks to disrupt those proceedings bears the burden of demonstrating that its need to intervene outweighs the disruption intervention would cause. Great Midwest sustained that burden here because it demonstrated a particularized need to intervene as of right under Civ.R. 24(A) and Civ.R. 24(C) and that its intervention would not cause any delay or disruption of the existing trial proceedings, its participation at trial would be limited to submitting jury interrogatories and/or jury instructions, and no apparent prejudice would result from granting such limited intervention. On balance, we find the circumstances justifying Great Midwest's limited intervention far outweigh any circumstance that could justify excluding Great Midwest from these proceedings.
Because the trial court erred in denying Great Midwest's motion to intervene, we sustain the assignment of error. The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellees its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE KILBANE, J., CONCURS; JAMES M. PORTER. J., DISSENTS(See Dissenting Opinion).
 ________________________________ DIANE KARPINSKI, PRESIDING JUDGE.
[1] Schmidlin and Kirk had previously filed an action, but it was voluntarily dismissed without prejudice to refiling.
[2] Civ.R. 24(C) provides, in relevant part:
 A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Civ.R. 5. The motion and any supporting memorandum shall state the grounds for intervention and shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought. * * *
[3] Because of the timing of its application, Great Midwest hardly was in any position to request anything more than the limited participation it sought.
[4] Because the interests of the D V defendants and Great Midwest could come into conflict, it follows that counsel for the D V defendants could not be forced into the position of attempting to represent adverse interests simultaneously.
 DISSENTING OPINION