DECISION AND JUDGMENT ENTRY
This is an appeal from several judgments of the Lucas County Court of Common Pleas in which the court ruled that: 1) appellee, State Farm Mutual Automobile Insurance Company, could intervene as a party defendant for the damages hearing in a lawsuit filed by appellants, Audra and Jeffrey Bennett, against an uninsured tortfeasor after the tortfeasor did not respond and appellants had been awarded a default judgment; and 2) appellee was entitled to summary judgment on all of the bad faith claims appellants filed against appellee. Appellants have presented two assignments of error for consideration that are:
"I. The Trial Court erred in allowing State
Farm Mutual Automobile Insurance Company to intervene as a party defendant with its contract dispute with its insured, into its insured's tort lawsuit against the tortfeasor when State Farm Mutual Automobile Insurance Company could fully protect its contractual interest in a separate arbitration or declaratory judgment action proceeding, and erred in failing to hold State Farm endorsement 6697 AU as contrary to R.C. 3937.18.
 "II. The Trial Court erred in summarily dismissing the Bennetts' failure to act in good faith claim against State Farm in entries of January 27, 1999 and April 9, 1999 when such claim was supported by evidence as follows:
 "A. State Farm Mutual Automobile Insurance refused to withdraw its intervention even after it had determined from its own legal counsel's opinion, and it is true as a matter of law, that it would not be contractual [sic] bound by a judgment in its insured's case against the tortfeasor since a default judgment has been rendered against the tortfeasor.
 "B. State Farm Mutual Automobile Insurance Company failed to give its insureds' financial interest, e.g. its insureds [sic] interest against the tortfeasor, equal consideration with its own interest e.g. it had no financial interest in its insureds' suit against the tortfeasor since it would not be bound by it and it had the ability to fully protect its contractual interest by a separate declaratory judgment action or arbitration.
 "C. State Farm Mutual Automobile Insurance Company used the premiums paid by its insured for underinsured motorist coverage to hire an expert witness to testify against its insured in its insured's [sic] lawsuit against the tortfeasor, when it had no financial interest in such litigation.
 "D. State Farm Mutual Automobile Insurance Company used the premiums paid by its insured for underinsured motorist coverage to hire counsel to oppose its insureds [sic] claim in its insureds lawsuit against the tortfeasor, and * * *
 "1. Such counsel acting as its agent repeatedly asserted that the insureds' damages were non-existent, or minimal, when State Farm Mutual Automobile Insurance Company, [sic] knew and had valued its insureds' damages as more substantial than represented, and * * *
 "2. Such counsel acting as its agent, repeatedly asserted that the insured was lying about medical instruction to wear a soft cervical collar when it had no basis for such assertion and had medical records establishing such medical instruction."
Before we address the arguments relating to the assignments of error, we will first review the pertinent facts and procedure in this case.
Appellants filed a suit in the Lucas County Court of Common Pleas on February 2, 1994 against an uninsured tortfeasor, Edward Glenn Butler. They asserted that the tortfeasor rear-ended their car on January 19, 1994, and that appellant Audra Bennett, who was a passenger in the back seat of their car at the time of the accident, sustained neck and back injuries as a result of the collision. They sought damages for her personal injuries and for appellant Jeffrey Bennett's loss of consortium. The uninsured torfeasor did not file any answer, and appellants filed a motion for a default judgment on March 18, 1994.
On March 25, 1994, appellee filed a motion to intervene and a request that the damage hearing be stayed. Appellee argued that it was undisputed that it provided underinsured motorist ("UM") coverage to appellants. It also argued that pursuant to existing case law in Ohio it would be bound to pay appellants the full amount determined in the damages hearing in their default judgment case against the tortfeasor as underinsurance. Therefore, it argued, it would be left without any way to challenge the amounts claimed by appellants as damages unless it was allowed to intervene as a party defendant.
Appellants replied that they did not oppose the intervention of appellee since appellee was a potential subrogee of appellants. However, they did oppose the idea that appellee should be allowed to intervene as a defendant. Appellants argued that any attempt on the part of appellee to reduce the amount of damages awarded to appellants in their default judgment case would amount to bad faith.
On May 2, 1994, the trial court issued an order granting appellee's motion to intervene. The trial court reiterated its ruling in a June 1, 1994 judgment entry in which it also formally granted appellants their default judgment against the tortfeasor.
Appellee filed an answer in which it denied all claims of injury made by appellants. Appellants responded with a motion to dismiss and a motion to strike the answer of appellee. Appellants continued to argue that appellee should not be allowed to intervene in the case as a defendant. On November 15, 1995, the trial court denied the motion to strike.
On January 23, 1996, the trial court granted a motion from appellee to join another insurance company that had paid some of appellant Audra Bennetts' medical bills as an involuntary plaintiff. By stipulation agreement, the other insurance company did not have to participate in the damages hearing because everyone agreed that if appellants did receive any damages award from a jury, they would use the first portion of the damages award to reimburse the other insurance company for its expenditures.
The parties and the court eventually determined that appellee did not initially file the correct pleading after it was granted leave to intervene. However, the court granted appellee leave to file the necessary pleading past time since both parties and the court had been acting under the assumption that appellee did intervene as a defendant.
Appellants eventually filed a motion for summary judgment, asking the trial court to declare a provision in their insurance contract with appellee, endorsement 6997 AU, void. Endorsement 6997 AU contained two provisions that envisioned the intervention of appellee in a lawsuit filed by the insured against an uninsured motorist. The first provision applied if either the insured or appellee chose not to arbitrate a dispute between them over the amount owed for UM coverage. In that instance the policy called for the insured to file a lawsuit against the uninsured tortfeasor and appellee.
The second provision applied anytime the insured chose to file a lawsuit against the uninsured tortfeasor. The provision read:
 "3. If the insured files suit against the owner or driver of the uninsured motor vehicle, we have the right to defend on the issues of the legal liability of and the damages owed by such owner or driver."
Appellant argued that the provisions were against the public policy of R.C. 3937.18, which requires that insurers offer UM coverage for automobile insurance customers, and that they are inconsistent with the fiduciary obligations the insurance companies owe to their insureds.
On September 24, 1996, the trial court denied appellants' motion for summary judgment. The trial court ruled that R.C. 3937.18
provides insureds protection for the amount of damages they are legally entitled to recover, and that the Supreme Court of Ohio has ruled that an insured has the obligation to prove the required elements for damages. The trial court noted that it is therefore necessary to first determine what amount of damages the uninsured tortfeasor is liable for before it can be decided what amount an insurer owes for UM coverage. The trial court concluded that the UM insurer can participate in that determination of damages as a party adverse to its insured in a case against the uninsured tortfeasor.
The trial court rejected appellants' claim that the intervention of their UM insurer was bad faith or a breach of a fiduciary duty. The trial court noted there are three general categories of bad faith — the refusal of a tortfeasor's insurer to settle with an injured party, the refusal to pay an insured's claim, and the blatant mishandling of a UM case — and said this case did not fit any of the three categories. The trial court further noted that there is ample case law, including some from this court, that contemplates insurers protecting their UM interests through intervention in lawsuits filed by their insureds against uninsured tortfeasors.
A hearing on damages was held, and the jury returned verdicts in favor of appellants. Appellant Jeffrey Bennett was awarded $1,000 for his loss of consortium, and appellant Audra Bennett was awarded $23,211 for her injuries. The trial court accepted the jury verdicts and entered judgment accordingly. Appellants then pursued their bad faith claims against appellee, which were bifurcated from the damages hearing. They amended their claim to concede that the trial court had the power, under the civil rules of procedure, to permit appellee to intervene. However, they continued to argue that since appellee had other methods to protect its interests, including filing a demand for arbitration before the default damages were set, or filing a declaratory judgment to enforce its contract terms with appellants, it was bad faith to use its right to intervene in this case "when it would harm its insured to do so * * *."
Appellee filed a motion for summary judgment on appellants' claims for bad faith. Initially, the trial court granted the motion, in part, and denied the motion, in part. After appellee filed a motion for reconsideration, he trial court vacated its earlier ruling and granted the motion for summary judgment on all claims except a claim for prejudgment interest. The trial court said there was evidence to show appellee was justified in believing appellant Audra Bennett was not seriously injured and that she could have returned to work sooner than she did.
On April 16, 1999, the parties filed notice of a settlement and dismissal of the prejudgment interest claim, thereby rendering this case final and appealable. Appellants then filed this appeal.
In support of their first assignment of error, appellants argue that the trial court erred when it permitted appellee to intervene as a party defendant in their suit against the uninsured tortfeasor because appellee had other ways to protect its interests. They also argue that enforcement of endorsement 6697 of their insurance policy, which provides that they are to name appellee as a defendant if they sue an uninsured tortfeasor, is contrary to the public policy of R.C. 3937.18, which requires insurers to offer UM coverage to automobile insurance customers.
Appellee responds that it needed to intervene in the default judgment case appellants brought against the uninsured tortfeasor to ensure that it could protect its own interests. It also argues that appellants' argument that it should have been required to file an arbitration request or a declaratory judgment action before the damages hearing in the default judgment against the uninsured tortfeasor is not meritorious, because it would not promote judicial economy to require it to pursue separate causes of action rather than intervening in the existing case against the uninsured tortfeasor. Finally, appellee argues that appellants have not shown how they were financially harmed by appellee's participation in the damages hearing. Appellee says that if the jury's verdict is recognized as "appropriate and fair", then it is apparent that appellants were not harmed by appellee's participation in the hearing.
In November 1999, this court considered an analogous appeal brought by an insurance company to challenge a trial court's ruling that the insurance company could not intervene in a case brought by the insurance company's insured against an uninsured tortfeasor. Bennett v. State Farm Mutual AutomobileIns. Co. (Nov. 12, 1999), Wood App. No. WD-99-010, unreported. In that case, we affirmed the trial court's ruling barring the insurance company from intervening because the tortfeasor, while uninsured, was represented by counsel and was presenting a defense at trial. We referred to the requirements found in Civ.R. 24(A) for intervention of right and then said:
 "In order to intervene of right, State Farm must file a timely application and show `(1) that it claims an interest relating to the property or transaction which is the subject of the action; (2) that it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (3) that the existing parties
do not adequately represent its interest.'" Id.quotingICSC Partners, L.P. v. Kenwood Plaza L.P.(1996), 116 Ohio App.3d 278,281.
We rejected the argument presented by State Farm's insured that State Farm could not intervene as a defendant because it could adequately protect its rights through subrogation. We said that the insureds cited no authority to support their assertion and we said: "We find that insurers are commonly added as party defendants in UM cases." Bennett v. State Farm Mutual AutomobileIns. Co. (Nov. 12, 1999), Wood App. No. WD-99-010, unreported.
We then noted that State Farm could "potentially" be bound by any judgment against the tortfeasor and said it was therefore "important to ensure that State Farm's interests are adequately represented by existing parties." Id. We said that the general rule is that "`when the party seeking intervention has the same ultimate objective as a party in the suit, the presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.'" Id., quoting ICSC Partners, L.P. v.Kenwood Plaza L.P. (1996), 116 Ohio App.3d 278, 283. We said that "bald assertions" by State Farm that the tortfeasor was not adequately representing its interests were not sufficient to overcome the presumption. We said that if circumstances changed, and State Farm could show the tortfeasor was not adequately protecting its interests, State Farm could again petition the trial court for permission to intervene. Bennett v. State FarmMutual Automobile Ins. Co. (Nov. 12, 1999), Wood App. No. WD-99-010, unreported. We declined to decide whether State Farm could enforce a contract provision that gave it a right to intervene anytime its insured sued an uninsured tortfeasor and therefore intervene as a defendant even if it did not meet all of the requirements listed in Civ.R. 24(A). We said: "insofar as State Farm seeks to enforce the terms of its policy with appellees, it must seek a declaratory judgment. A declaratory judgment action would determine whether the provision in State Farm's policy to be named a defendant was enforceable and/or whether appellees' failure to add State Farm as a defendant constituted a breach of their policy, possibly precluding them from recovery." Id.
We remain of the opinion that an UM insurer that can demonstrate all the requirements for intervention of right can choose that option and can intervene as a party defendant rather than be limited to protecting its interests through subrogation or arbitration. Furthermore, in the case at bar, we find, as appellants eventually conceded in the trial court, that appellee clearly showed that all three requirements listed in Civ.R. 24(A) for intervention of right were met.
First, appellee showed that it had an interest in the transaction that was the subject of the lawsuit. Appellee cited precedent showing that it could be liable to appellants for UM coverage in the amount determined at the damages hearing against the uninsured tortfeasor.
Second, appellee showed that the disposition of the action without its participation could impede or impair its ability to protect its interests. Appellee cited to case law in Ohio that establishes the general rule that an UM insurer is bound by the damages determined in a lawsuit filed by the UM insurer's insured against an uninsured tortfeasor when the UM provider knows about the lawsuit. See, e.g., Motorist Mutual Ins.Cos. v. Handlovic (1986), 23 Ohio St.3d 179, syllabus.
Finally, in this case, appellee was able to show that the tortfeasor was not adequately representing its interests. Indeed, the uninsured tortfeasor was not presenting any defense at all.
Appellants argue that allowing appellee to intervene, even when all of the requirements of Civ.R. 24(A) are met, violates the provisions of R.C. 3937.18 in two ways. First, they argue, it violates the public policy purpose of the statute to protect persons seeking UM coverage. Second, they argue, it violates the statute because the statute does not "have a provision that the insurer has to provide uninsured motorist [sic]only if it is allowed to participate in the legal proceeding ofits insured against the tortfeasor." (Emphasis sic.) They argue that UM insurers should not be able to contractually add a requirement for UM coverage that was not specified in the statute namely, that the UM insurer must be allowed to intervene in any lawsuit filed by the insured against an uninsured tortfeasor.
We reject both of appellants' arguments for the following reasons. First, we note that rules of court override statutes on procedural matters, see Section 5(B), Article IV, Ohio Constitution; State v. Barnes (Dec. 30, 1999), Clermont App. No. CA99-06-057, unreported, at note 1, so the provisions of Civ.R. 24(A) establishing the procedure for intervention would override any statutory procedural requirements for intervention.
Second, we note that permitting an UM insurer who meets the requirements of Civ.R. 24(A) to intervene does not mean its insured is not entitled to UM coverage and does not, therefore, leave the insured without UM protection. Instead, it permits the UM insurer to have some assurance that it will only be obligated to reimburse its insured for legitimate UM costs.
Third, we find that in this case appellee did not need to rely upon the provision in its insurance contract with appellants allowing it to intervene in the lawsuit appellants filed against the uninsured tortfeasor, because it met all the requirements of Civ.R. 24(A) for intervention. Therefore, in this case the contractual provision requiring appellants to name appellee in any lawsuit filed against an uninsured tortfeasor was not the basis for the intervention order. Even if it were the basis for the intervention order in this case, it did not serve to create any new or additional requirement for UM coverage, since appellee was entitled, pursuant to Civ.R. 24(A) to intervene of right. Furthermore, as we noted in Bennett v. State Farm MutualIns. Co. (Nov. 12, 1999), Wood App. No. WD-99-010, unreported, a party seeking a ruling on the enforceability of a contract provision should file a declaratory judgment action.
Accordingly, we reject appellants' assertion that the trial court erred when it allowed appellee to intervene of right as a defendant in their lawsuit against the uninsured tortfeasor. Appellants' first assignment of error is not well-taken.
In support of their second assignment of error, appellants argue that appellee acted in bad faith when it intervened as a party defendant in the case appellants filed against the uninsured tortfeasor. Appellants say appellee had no financial interest to protect because: (1) it knew it would not be bound by the default judgment entered against the uninsured tortfeasor and made notations to that effect in its own files; and (2) it could have sought arbitration or filed a separate declaratory judgment action.
Appellants also allege that appellee harmed their financial interests by intervening in their lawsuit against the uninsured tortfeasor. They say that the intervention caused a delay in their case, and that it can be inferred that appellee knew it was harming their case when it hired a dental expert to testify that fractures found in appellant Audra Bennett's teeth were not caused by the accident with the uninsured tortfeasor. Finally, they argue that the conduct of the attorney representing appellee at trial constituted bad faith.
We have carefully considered all of the arguments presented by appellants and have thoroughly reviewed the record. For the following reasons, we find no merit in their assertions that appellee acted in bad faith when it intervened in appellants' case against the uninsured tortfeasor.
The Supreme Court of Ohio has made it clear that the standard of review for an allegation of bad faith made against an insurer for the way it handled a claim for coverage from its insureds is only met if the record shows that there were no circumstances in the case that created a reasonable justification for the insurer's actions. See Zoppo v. Homestead Ins. Co. (1994),71 Ohio St.3d 552, syllabus. In this case, we find that the record does show that there were circumstances that provided reasonable justification for appellee's actions, so the standard of review for bad faith is not met.
With regard to appellants' argument that appellee knew it would not be bound by the default judgment and that it made notations to that effect in its own files, we have reviewed the files in question and have found notes to the effect that appellee would not be bound by the default judgment. However, the notations when read in context show that when the writers said they were not "bound" by the default judgment, they were referring to the fact that no amount of damages had yet been set by that judgment, and they were still free to intervene and to challenge appellants' claims regarding some of the damages.
Furthermore, the notes in their files and the trial transcript show they had information that led them to believe that not all of appellant Audra Bennett's medical expenses that were submitted for payment related to injuries that were the direct result of the accident with the uninsured tortfeasor. For instance, the dentist hired by appellee to review the dental records of Audra Bennett opined that the chipped tooth and other tooth fractures suffered by Audra were not caused by the accident because: 1) she did not hit her head in the accident; 2) she did not suffer any pain from the chip or the fractures right after the accident; and 3) her records showed notations before the accident that she ground her teeth at night, a condition that often leads to fractures in teeth.
In addition, as this court has previously noted, appellee had good reason to believe that it would be bound by any damages determined at a damages hearing in the default judgment. The Supreme Court of Ohio has established precedent to the effect that an insurer providing UM coverage that knows its insured issuing an uninsured tortfeasor will be generally be bound by the liability amount determined in that lawsuit. Motorist Mut. Ins.Co. v. Handlovic (1986), 23 Ohio St.3d 179, 182. Therefore, we find that contrary to appellants' assertions, appellee did have a financial interest to protect, and it was free to decide that the best option available to it to ensure that it would not be required to pay unjustified expenses for UM coverage was to intervene in the default judgment case.
Appellants are technically correct that appellee could have filed for subrogation or for arbitration before the damages were decided in the default judgment case. However, as we have already said in our discussion of the first assignment of error, appellee was not restricted to those options, since it met all the requirements for intervention of right, and it was free to exercise the option it believed best protected its interests and best fit the circumstances of the case.
In this case, appellee had some legitimate questions about some of the medical claims submitted by appellants. If appellee chose subrogation as an option, it would be left with no opportunity to have the merit of the claims evaluated. If appellee chose arbitration as an option, it would be quite certain that appellants would present the jury verdict on liability as part of its case in arbitration. Appellee could reasonably believe that the legitimacy of the damages would be harder to evaluate under those circumstances. Therefore, the best option for appellee to choose was to intervene in the default judgment case for the damages hearing. In that way, appellee could have the merits of the damages claims assessed before it became liable for any amount of UM coverage payments to appellants.
We are likewise unpersuaded by appellants' assertions that appellee set out to harm their financial interests when it intervened in their lawsuit and hired a dental expert to testify, and that those actions constituted bad faith. The record shows that appellee had some legitimate questions about some of the claimed damages, but that it was willing to pay expenses it could verify. Appellee never made a blanket denial of UM coverage, and it had reasonable justification for the course of action it followed.
Finally, we have carefully reviewed the trial transcript with appellants' assertions that the conduct of appellee's trial counsel itself constituted bad faith. We agree with the assessment of the trial court on this issue. Appellee's trial counsel did raise questions about the legitimacy of the need for appellant Audra Bennett to wear a neck collar for as long as she did, to stay home from work for as long as she did, and to claim that her chipped and fractured teeth were caused by the accident with the uninsured tortfeasor, but his questions did not exceed the normal boundaries of trial practice. Instead, his questions allowed appellants to respond with further proof or explanations as necessary to show the jury that their claimed injuries were legitimate and did stem from the accident. The fact that appellants were required to support their claims instead of proceed unopposed in a damages hearing in a default case may have frustrated appellants, but we find no basis for saying that appellee's trial counsel acted without reasonable justification when he raised questions at trial regarding appellants' damages. Appellants' second assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
 _____________________ Peter M. Handwork, J.
James R. Sherck, J., Richard W. Knepper, P.J., Concur.