JOURNAL ENTRY AND OPINION
In this consolidated appeal, defendant-appellant, State of Ohio, challenges the decision of the Cuyahoga County Court of Common Pleas entered on the complaint for declaratory relief brought by Ohio State Building and Construction Trades Council, Cleveland Building 
Construction Trades Council and International Union of Operating Engineers, Local 18, (collectively referred to as plaintiffs). The court declared R.C. Chapter 4116 to be preempted by the National Labor Relations Act and thereafter permanently enjoined its enforcement. Proposed intervenor-appellant, Ohio Associated Builders Contractors, Inc. (Ohio ABC), claims that the trial court erred in the denial of its motion to intervene. For the reasons that follow, we affirm the trial court's denial of Ohio ABC's motion to intervene but we reverse the decision of the trial court that found R.C. Chapter 4116 preempted by the National Labor Relations Act and thereafter enjoined the statute's enforcement.
 I. Background
This appeal involves the use of a project labor agreement (PLA), which is a form of pre-hire collective bargaining agreement used primarily in complex construction projects where large numbers of contractors and sub-contractors are on site. These agreements provide uniform working hours, shift times, scheduling of holidays, overtime and premium pay and terms and conditions of employment. When in place, all contractors, unions and their employees become subject to the same agreement. This document supersedes any other agreement between or among the respective parties and is limited to the construction project that it covers. Historically, PLAs have been used in Ohio for both private and public construction projects.
On January 28, 1999, H.B. 101, the Open Contracting Act, was introduced in the Ohio General Assembly. After amendment, Am. H.B. 101 was passed by the Ohio House of Representatives on May 12, 1999 and by the Ohio Senate on June 23, 1999. On July 13, 1999, the bill became law without the signature of the governor. It became effective on October 11, 1999 and is codified at R.C. Chapter 4116.
Prior to the enactment of this statute, the Cuyahoga County Commissioners(County) and the Cleveland Building Construction Trades Council (CBCTC) had been negotiating terms for a potential PLA to cover the construction of a new juvenile detention center in the county. Negotiations were terminated by letter dated July 2, 1999, in which the county deputy administrator advised CBCTC that * * * passage of H.B. 101 prohibits the County from pursuing the development and execution of the proposed agreement.
Thereafter, on September 9, 1999, plaintiffs filed a complaint for declaratory and injunctive relief seeking to prohibit the enforcement of R.C. Chapter 4116.[1] Named as defendants were the State of Ohio and the County. Plaintiffs allege in their complaint that the statute prevents public authorities from entering into pre-hire collective bargaining agreements despite Section 8(f) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(f), which, it alleges, permits employers in the construction industry to enter into such agreements. Plaintiffs sought a declaration that (1) R.C. Chapter 4116 is invalid because it is preempted by the NLRA and therefore violative of the Supremacy Clause of the United States Constitution and (2) the County incorrectly relied upon this invalid statute when it terminated its negotiations with CBCTC.
On September 17, 1999, non-party Ohio ABC, moved to intervene in the matter pursuant to Civ.R. 24(A) and (B). This motion was ultimately denied on October 13, 1999.[2]
A hearing on plaintiffs' complaint and request for permanent injunction was held October 12, 1999. Plaintiffs presented the testimony of one witness, Loree K. Soggs, who is both the Executive Secretary of CBCTC and a member of Local 18, International Union of Operating Engineers.[3]
Soggs testified that he is responsible for negotiating PLAs between local unions and the owners, contractors and developers of construction projects and that such agreements provide the working rules, security clauses and provisions precluding work slow downs or stoppages during the course of construction. He noted that PLAs covered recent private sector projects such as the construction of Tower City, Key Center, Strongsville Mall and Severance Hall. Public sector projects such as Jacobs Field, Gund Arena and the Cleveland Browns Football Stadium were likewise covered by PLAs.
Soggs further testified that, in September 1998, while meeting with representatives from the County, he proposed the idea of a PLA for the construction of the proposed juvenile detention center. Soggs made the same proposal in a letter to Lee Trotter, Cuyahoga County Assistant Administrator. Soggs met with the county commissioners on several occasions and sent examples of prior local public works PLAs to Court Administrator Tom Hayes for his review. In a letter dated July 2, 1999 and before an agreement could be reached, Trotter terminated negotiations on behalf of the County citing the passage of H.B. 101 as his reason. CBCTC, nonetheless, remains interested in negotiating a PLA for the eventual construction of a juvenile detention center.
In its order journalized October 18, 1999, the trial court permanently enjoined the enforcement of R.C. Chapter 4116 finding (1) that this statute is violative of, and preempted by, the NLRA and, therefore, invalid under the Supremacy Clause of the United States Constitution; and (2) that the County did rely upon this invalid statute in terminating its negotiations with CBCTC regarding a project labor agreement for the proposed juvenile detention center.
The State now appeals this order. This court permitted Ohio ABC and National Right to Work Legal Defense Foundation to file briefs amici curiae on this issue (case number 77262). Ohio ABC also appeals the trial court's denial of its motion to intervene, which this court initially dismissed (case number 77242). Its appeal was later reinstated and consolidated with case number 77262 for briefing on appeal.
 II. Case Number 77242 Intervention Issue Ohio ABC was not entitled to intervene either permissively or as a matter of right where its interests were adequately represented by the State of Ohio.
Ohio ABC appeals the denial of its motion to intervene and advances two assignments of error for our review. Succinctly, Ohio ABC complains that the trial court erred when it failed to allow it to intervene as a matter of right under Civ.R. 24(A)(2) or, alternatively, permissively under Civ.R. 24(B). These assigned errors having a common basis in law and fact will, therefore, be considered together.
Civ.R. 24 governs intervention and provides, in relevant part:
(A) Intervention of right.
 Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
(B) Permissive intervention.
 Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
The rule is to be liberally construed in favor of intervention. State ex rel. Smith v. Frost (1995), 74 Ohio St.3d 107, 108. This court will not reverse the denial of a motion to intervene unless the trial court's action constituted an abuse of discretion. Young v. Equitec Real Estate Investors Fund (1995), 100 Ohio App.3d 136, 138; Widder and Widder v. Kutnick (1996), 113 Ohio App.3d 616, 624. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; Castlebrook, Ltd. v. Dayton Properties, Ltd. (1992), 78 Ohio App.3d 340, 346.
In order to be entitled to intervene as a matter of right under Civ.R. 24(A)(2), the intervenor must (1) claim an interest relating to the property or transaction that is the subject of the action; (2) be so situated that the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect his or her interest; (3) demonstrate that his or her interest is not adequately represented by the existing parties; and (4) demonstrate that the motion to intervene is timely made. Fairview Gen. Hosp. v. Fletcher (1990),69 Ohio App.3d 827, 831; Southern Ohio Coal Co. v. Kidney (1995),100 Ohio App.3d 661, citing Fouchev. Denihan (1990), 66 Ohio App.3d 120,122-123; and, Blackburn v. Hamoudi (1986), 29 Ohio App.3d 350, 352. Each of the four conditions must be established in order for there to be a right to intervene. Civ.R. 24(A). The failure by a prospective intervenor to satisfy any one of the required elements justifies the denial of the right to intervene. Fairview Gen. Hosp. v. Fletcher,69 Ohio App.3d at 831; see, also, Ribovich v. Miele Bros. Ent., Inc. (Dec. 2, 1999), Cuyahoga App. Nos. 76137 76182, unreported at 17, 1999 Ohio App. Lexis 5711.
In determining whether Ohio ABC had the right to intervene pursuant to Civ.R. 24(A)(2), this court must consider whether Ohio ABC timely demonstrated a direct and substantial interest in the present litigation that would not have been adequately represented by the existing parties and whether such interest would be impaired upon the trial court's ruling regarding the issue of whether R.C. Chapter 4116 is preempted by federal law. Ohio ABC claims that (1) it has the requisite interest because it is a statewide non-profit organization representing contractors and subcontractors who provide non-union construction services and, as such, its members would directly benefit from the enforcement of R.C. Chapter 4116; (2) disposition of the matter will impair or impede its ability to protect that interest; and (3) the governmental entities named as defendants have interests distinct from the interests of Ohio ABC. Therefore, it claims to have satisfied the rule's requirements and it was error for the trial court to deny its motion for intervention. We disagree.
While we find that Ohio ABC has timely filed its motion and has adequately demonstrated an interest in the matter, the record supports that Ohio ABC and the State have identical objectives in that both parties want to defend the constitutionality of the statute. When the party seeking intervention has the same ultimate objective as a party in the suit, the presumption arises that its interests are adequately represented against which the petitioner must demonstrate adversity of interest, collusion or nonfeasance. Piedmont Paper Products, Inc. v. Am. Fin. Corp. (S.D.Ohio 1980), 89 F.R.D. 41, 44; see, also, ICSC Partners, L.P. v. Kenwood Plaza, L.P. (1996), 116 Ohio App.3d 278, 283.
We acknowledge the interests of Ohio ABC in presenting its views and concerns to the trial court.[4] We, nonetheless, find that Ohio ABC failed to show that those interests would not be fairly and adequately represented by the State. There is nothing in the record to suggest that the State and Ohio ABC have adverse interests or that the State has been derelict in its duty to present its case. As a consequence, it was reasonable for the trial court to conclude that Ohio ABC's rights were adequately represented precluding its right to intervene under Civ.R. 24(A)(2). See Ottawa Cty. Bd. of Commrs. v. Marblehead (1995),102 Ohio App.3d 306, 316-317.
Consequently, Ohio ABC's first assignment of error is not well taken and is overruled.
Alternatively, Ohio ABC argues that the trial court abused its discretion in denying its motion to permissively intervene in the action where its intervention would not cause undue delay or prejudice to the adjudication of the rights of the original parties. We will not, however, substitute our judgment for that of the trial court. We find no abuse of discretion in denying Ohio ABC permissive intervention where the matter may be fairly and adequately decided without intervention of the petitioning party.
Finally, because we find no support in the law for Ohio ABC's assertion that the trial court's failure to elucidate its rationale for denying its motion constitutes reversible error, we simply reject this argument. Consequently, Ohio ABC's second assignment of error is not well taken and is overruled.
The decision of the trial court is affirmed as to Ohio ABC's appeal in case number 77242.
 III. Case Number 77262 Constitutional Challenge A. Propriety of Declaratory Judgment R.C. Chapter 4116 does not preclude a public authority from entering into a PLA therefore no controversy existed justifying the trial court's decision to grant declaratory relief.
R.C. 2721.03 governs the construction or validity of instruments or other legal provisions as they relate to declaratory judgment actions and provides, in part:
 Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a * * * written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01
of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.* * *
In determining that a case is ripe for a declaratory judgment, it must be demonstrated that (1) a real controversy exists between the parties; (2) the controversy is justiciable in character; and (3) the situation requires speedy relief to preserve the rights of the parties. Burger Brewing Co. v. Liquor Control Comm. (1973), 34 Ohio St.2d 93, 97; see, also, Buckeye Quality Care Centers, Inc. v. Fletcher (1988),48 Ohio App.3d 150, 154. It is not necessary that there be a violation of the statute at issue in order for a justiciable controversy to exist. Burger Brewing, 34 Ohio St.2d at 98. On the contrary, it is necessary only that there be a controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Peltz v. South Euclid (1967), 11 Ohio St.2d 128,131.
Plaintiffs contend that R.C. Chapter 4116 has the effect of prohibiting a public authority from ever entering into a PLA, a practice that is expressly permitted under Section 8(f) of the NLRA, 29 U.S.C. § 158(f). This section provides, in relevant part:
 It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members * * * because * * * (2) such agreement requires as a condition of employment, membership in such labor organization * * *.
A careful reading of R.C. 4116.02, the statutory provision directed at agreements such as PLAs, however, does not lend itself to the interpretation that plaintiffs assert. R.C. 4116.02 provides, in relevant part:
 A public authority, when engaged in procuring products or services, awarding contracts, or overseeing procurement or construction for public improvements, shall ensure that bid specifications issued by the public authority for the proposed public improvement, and any subsequent contract or other agreement for the public improvement to which the public authority and a contractor or subcontractor are direct parties, do not require a contractor or subcontractor to do any of the following:
 (A) Enter into agreements with any labor organization on the public improvement;
 (B) Enter into any agreement that requires the employees of that contractor or subcontractor to do either of the following as a condition of employment or continued employment:
 (1) Become members of or affiliated with a labor organization; (2) Pay dues or fees to a labor organization.
The statute itself does not on its face or by its application prohibit a public authority from entering into a PLA. On the contrary, the statute merely prohibits such an entity from entering into a PLA that requires (1) the contractor to enter into an agreement with a labor organization; (2) the employees of that contractor to become members or otherwise affiliated with a labor organization; or (3) the contractor's employees to pay fees or dues to a labor organization. Thus, it is not that the public authority is prohibited under the statute from entering into a PLA but, rather, that the public authority is prohibited from entering into a PLA with objectionable terms.
Merely because Section 8(f) of the NLRA provides that it is not an unfair labor practice to include such terms in a PLA does not mean that these very terms are essential to the agreement and must be included in order to be an effective PLA. On the contrary, a PLA can be drafted without these terms and still be valid and enforceable.
Moreover, Section 164(b) of the NLRA specifically provides that nothing in the Act shall be construed as authorizing the execution of an agreement that requires membership in a labor organization as a condition of employment where the execution of such an agreement is prohibited by state law. Section 164(b), Title 29, U.S. Code. It is disingenuous, therefore, to suggest that the statute's restrictions have the effect of prohibiting a public authority from entering into a PLA. This simply is not true.
The dissent asserts that R.C. 4116.02(A) does effectively prohibit such agreements. We do not disagree with the dissent that there are many benefits to the proper use of a PLA. Nor do we disagree that the NLRA accommodates conditions specific to the construction industry by exempting such agreements from what would otherwise be an unfair labor practice in other industries. See Section 158(e), Title 29, U.S. Code. Nonetheless, the dissent relies on assumptions that are unsupported by the facts contained in the record.
In particular, the dissent rests heavily on the assumption that it is the labor organization that directs the substance and content of a PLA and that it is only after its negotiations with the project owner that contractors and subcontractors are brought in. Whether this is an accurate portrayal of the practice in the construction industry is unknown to this court and is not supported by the record. The dissent concedes that R.C. Chapter 4116 is unaffected if this business practice is not as the dissent assumes because it is the contractual relationship between public authorities and contractors that the statute governs.
We make no such assumptions, however, and continue to adhere to our conclusion that the statute's restrictions do not effectively prohibit a public authority from entering into a PLA. While the statute's effect could alter a business practice, it does not create a real controversy worthy of declaratory relief. It was error, therefore, for the trial court to grant such relief.
 B. Constitutionality of R.C. Chapter 4116 Even if we were to find that R.C. Chapter 4116 precludes a public authority from entering into a PLA and therefore a real controversy existed justifying declaratory relief, the statute is not preempted by the NLRA because the State, in enacting this legislation, is not regulating the market but allowing a public authority to act as a market participant.
It is well established that statutes enjoy a strong presumption of constitutionality. An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. A legislative enactment is presumed valid and cannot be declared invalid unless it appears that there exists a clear conflict between the legislation at issue and a particular provision or provisions of the Constitution. State v. Cook (1998), 83 Ohio St.3d 404, 409 citing Xenia v. Schmidt (1920), 101 Ohio St. 437, paragraph two of the syllabus.
Judicial consideration of issues arising under the Supremacy Clause begins with the assumption that the historic police powers of the States are not to be superseded by * * * Federal Act unless that [is] the clear and manifest purpose of Congress. Cipollone v. Liggett Group, Inc. (1992), 505 U.S. 504, 516 quoting Rice v. Sante Fe Elevator Corp. (1947), 331 U.S. 218, 230; see, also, Dutton v. Acromed (1997),117 Ohio App.3d 804, 809. Whether a federal statute preempts state law is a question of congressional intent. Cipollone, 505 U.S. at 545; see, also, English v. General Elect. Co., (1990), 496 U.S. 72, 78-79.
The NLRA contains no express preemption provision. Building Constr. Trades Council of the Metro. Dist. v. Associated Builders Contractors of Mass./R.I., Inc. (1993), 507 U.S. 218, 224 [Boston Harbor]; J.A. Croson Co. v. J.A. Guy, Inc. (1998), 81 Ohio St.3d 346, 350. Where there is no express preemption provision, a state statute will be upheld unless it conflicts with the federal law, frustrates the federal scheme or unless it can be determined from the totality of the circumstances that Congress meant to occupy the field to the exclusion of the states. Metropolitan Life Ins. Co. v. Massachusetts (1985), 471 U.S. 724,747-748, citing Allis-Chalmers Corp. v. Lueck (1985), 471 U.S. 202, 209.
The courts have recognized two types of preemption by the NLRA. The first is Garmon preemption, which forbids state and local regulation of activities either protected by the NLRA under Section 7 or prohibited as an unfair labor practice under Section 8 of the Act. San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236. Since neither is implicated in this case, analysis under this type of preemption is unwarranted.
The second type of preemption recognized by the United States Supreme Court is set forth in Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n (1976), 427 U.S. 132,96 S.Ct. 2548. Under Machinists, a statute will be preempted by the NLRA if the state attempts to regulate areas which have been left open by the NLRA in order that they be controlled by the free play of economic forces. Id. Thus, the state is prevented from regulating within a zone protected and reserved for market freedom. Nonetheless, when the state acts as a market participant as opposed to a market regulator, the preemption doctrine is inapplicable and a state may enact legislation allowing a public authority to choose whether to enter into a PLA. Boston Harbor, 507 U.S. at the syllabus.
With these principles of law in mind, we review the statute to determine whether it is a permissible exercise of the State's legislative authority in light of the terms of the NLRA. Our review is limited to a determination of whether the legislative action by the State in enacting R.C. Chapter 4116 is preempted by the NLRA. This question has not been decided by any court.
Were we to find that the statute prevents public authorities from requiring contractors to agree to be bound by a PLA, R.C. 4116.02 seems to regulate a public authority's freedom to choose whether to enter into a PLA when that entity acts as a market participant while contracting on public works projects. More directly, however, the issue is whether the statute represents the public authority's exercise of its right to choose, in a summary manner, never to enter into a PLA on any public construction project when it acts as a market participant; or, whether the statute creates an impermissible regulation upon the public authority itself because, as a market participant, that entity has the right to choose whether to enter into a PLA on each construction project on a project-by-project basis.
The dissent claims that the enactment of the statute has the effect of regulating all construction contracts for any public improvement as opposed to the state acting as a market participant on a single contract as was the case in Boston Harbor. Yet Boston Harborneed not be read so narrowly. It is true that the NLRA was intended to supplant state labor regulation. The Act was not intended, however, to supplant all legitimate state activity that affects labor. 207 U.S. at 227. The dissent appears willing to find that the state may be considered a market participant if the statute's application would be limited to projects involving state funds. It claims that the any subsequent contract language contained in R.C. 4116.02(A) is far-reaching and would involve any project by an institution supported in whole or in part by public funds. This language, it contends, goes beyond projects involving state funds and therefore attempts to regulate an area meant to be left to the free play of economic forces. We disagree.
A public authority is permitted to make a choice of whether it will enter into a PLA on its construction projects. See Boston Harbor,507 U.S. at 231. Even if the statute could be interpreted so as to preclude a public authority from entering into a PLA, we do not see this as a violation of any freedoms encompassed in the NLRA as set forth in 158(e) or (f). R.C. Chapter 4116 merely sets forth, in statutory form, the self-imposed limitations when entering into construction contracts when a public authority acts as a market participant. The State has the right to limit itself. The statute does not impinge on the rights of any other entity to enter into a PLA and, as such, it does not frustrate the intent of Congress to permit the use or non-use of PLAs to be controlled by the free play of economic forces.
Consequently, even if we were to find that R.C. Chapter 4116 prohibits a public authority from entering into a PLA, this statute is not preempted by the NLRA because it does not regulate an area protected for the free play of economic forces but only embraces the position taken by such an entity when it acts as a market participant.
 IV. Conclusion
We do not find that R.C. Chapter 4116 prohibits a public authority from entering into a PLA and, as such, there is no real controversy that warrants declaratory relief. Even were we to find that R.C. Chapter 4116 precludes a public authority from entering into a PLA, the statute is not constitutionally infirm on the basis that it is preempted by the NLRA because the State is not acting as a market regulator but rather is acting as a market participant. Consequently, the trial court erred when it found R.C. Chapter 4116 unconstitutional and enjoined its enforcement.
The State's sole assignment of error is well taken and is sustained.
The decision of the trial court is reversed as to Case Number 77262, reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. Ohio Associated Builders and Contractors, Inc. to pay costs.
Case No. 77262 is reversed for further proceedings consistent with the opinion herein. Ohio State Building Construction Trades Council and Cuyahoga County Board of Commissioners to pay costs. It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Judgment Appeal No. 77242 AFFIRMED. Appeal No. 77262 REVERSED.
MICHAEL J. CORRIGAN, J., CONCURS; KENNETH A. ROCCO, J., CONCURS AND DISSENTS WITH OPINION.
[1] Contemporaneous requests for a temporary restraining order and preliminary injunction were denied when plaintiffs were unable to demonstrate immediate irreparable loss, injury or damage.
[2] On September 20, 1999, the State removed the matter to the United States District Court, Northern District of Ohio, and the trial court initially denied the motion to intervene as moot. The County and proposed intervenor, Ohio ABC, filed motions to remand, which the district court granted on October 6, 1999.
[3] Local 18, International Union of Operating Engineers is a member of both CBCTC and Ohio State Building Construction Trades Council.
[4] On appeal, Ohio ABC has been granted leave by this court to file its brief amicus curiae.